UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **ORIGINAL** |
| ) | |
| Plaintiff, ) | |
| ) | NO. CR04-281C |
| vs. ) | Seattle, Washington |
| ) | 10:13 a.m. |
| DAVID YOUNGBERG, ) | September 24, 2004 |
| ) | |
| Defendant. ) | |

VERBATIM REPORTED PROCEEDINGS FOR SENTENCING

BEFORE THE HONORABLE JOHN C. COUGHENOUR
UNITED STATES DISTRICT COURT JUDGE

04-CR-00281-TN

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | VINCE LOMBARDI, ESQ.<br>Assistant United States Attorney<br>700 Stewart Street<br>Suite 5220<br>Seattle, Washington 98101 |
| For the Defendant: | NANCY TENNEY, ESQ.<br>Federal Public Defender<br>1601 5th Avenue<br>Suite 700<br>Seattle, Washington 98101 |
| U.S. Probation: | MONIQUE NEAL |
| Court Reporter: | LAURIE BRIGGS, RPR<br>#801 Washington Building<br>1019 Pacific Avenue<br>Tacoma, Washington 98402<br>(253) 627-2062 |

1   (Defendant Present.)

2           THE CLERK: CR04-281, *United States v. David*

3   *Youngberg.*

4           MR. LOMBARDI: Good morning, your Honor, Vince

5   Lombardi for the United States.

6           MS. TENNEY: Good morning, your Honor, Nancy Tenney

7   for Mr. Youngberg.

8           THE COURT: Mr. Youngberg, have you had an

9   opportunity to review and comment on the presentence report?

10          THE DEFENDANT: Yes.

11          THE COURT: All right. Ms. Tenney?

12          MS. TENNEY: Good morning, your Honor. We agree

13  with the guideline calculations as set forth in the

14  presentence report. We are, however, asking the Court to

15  depart downward for a variety of factors in combination.

16  Probably the core of our downward departure is based on Mr.

17  Youngberg's diminished capacity at the time of the offense.

18          We submitted a report from an evaluation that was

19  completed in Canada by a Dr. Eaves (phonetic) who concluded

20  that Mr. Youngberg's mental illness substantially compromised

21  his intellectual ability and judgment leaving him poorly

22  situated to make the correct decisions on the day he became

23  involved in this offense. This is not to say that he didn't

24  know what he was doing or he didn't realize the choice that

25  he was making, but that he was very vulnerable to the

1  pressures and making the poor decision that brings him here
2  before your Honor today.
3          Dr. Eaves also comments on the impact of a sentence
4  for Mr. Youngberg. He has -- I have spoken at length with
5  his family and Mr. Youngberg himself, and simply the
6  prosecution itself has posed a tremendous punishment on him
7  and his entire family. They have lost a great deal of work
8  time dealing with this case.
9          He has become incredibly depressed and withdrawn,
10 not leaving his room for days at a time. He has become near
11 suicidal at times, which his parents have always been very
12 much involved in caring for his mental health conditions and
13 continue to do so, and the concern of Dr. Eaves, as well as
14 clearly of his parents as well, is that were he to be
15 incarcerated there would not necessarily be someone who would
16 be watching him as closely as his parents and who would not
17 be as familiar with his mental health background as the
18 doctors who treat him there in Canada.
19         We would ask the Court to consider a sentence of
20 probation or supervised release, as he has already been in
21 custody for a time, to allow him to return home where his
22 parent can oversee his mental health care and his daily
23 living.
24         We have also provided grounds for a downward
25 departure based on the fact that he is Canadian citizen will

1  not allow him to go to the lower security facilities and will
2  not allow him to participate in a drug treatment program or a
3  halfway house.  And we would ask the Court to consider the
4  combination of circumstances here.
5          Mr. Youngberg has absolutely no criminal history.
6  He has never been in trouble before, which, again, I think is
7  significant given the long documented history of mental
8  impairment that he has.  I think that both reflects well on
9  Mr. Youngberg and his parents who have kept a very active
10 role in monitoring what he does and who he hangs out with,
11 things like that.
12         I think the sentence that the Court would impose
13 here would be imposing a sentence on his entire family.  His
14 parents are here today.  As I said, they have been incredibly
15 responsible in making sure that he makes all his court
16 appearances and essentially translating court documents to
17 him that take repeated readings in order for him to
18 understand, and in order to even make him able to come to the
19 phone to talk to me when his depression is at its worst.
20         So we would ask the court to consider those -- the
21 combination of those conditions to allow him to return to
22 Canada.  He has done remarkably well on pretrial supervision.
23 There is no incidents whatsoever.  If the Court does choose
24 to impose prison time, he would ask that the Court allow him
25 to self-surrender.

1           Again, his parents are here and understand what is
2   required in order to self-report and would ensure that he did
3   so. We would also request placement at Sheridan, if he is
4   incarcerated so that he can be closest to his family so they
5   would be able to visit him.
6           THE COURT: All right. Does your client wish to
7   say anything?
8           MS. TENNEY: Your Honor, he does not wish to talk.
9   He prepared a written statement that I would like to read for
10  him for the Court. I'm not sure that I brought it up here
11  with me. Let me just find that, your Honor. Your Honor,
12  this is a statement that Mr. Youngberg wrote himself but did
13  not feel comfortable reading for himself in court.
14          "I would like to briefly express my thoughts and
15  feelings regarding this case. This has had a huge impact on
16  my life and with my family. I am deeply depressed right now.
17  I am not looking forward to anything in my life, because I
18  feel that I am finished. I would like to apologize to the
19  United States and to Customs and the judge for my actions.
20  Because of all of this both my parents have lost time at
21  work, and their business has suffered. The stress has caused
22  my mother to have health problems. As for myself, I would
23  rather be dead than to throw whatever time to waste in my
24  life. I can be unpredictable, but I hope that I might come
25  to see once again -- I hope when this is all over I may come

1   once again to see that I am useless to live in this world."
2           THE COURT: Mr. Lombardi?
3           MR. LOMBARDI: Your Honor, the parties all agree on
4   the guideline range along with probation. The only issue is
5   whether you should depart downward from the guideline range.
6   Three grounds have been identified for departing downwards.
7   His alleged diminished mental capacity is number one. Number
8   two is that he might be looking at more restrictive
9   confinement, because he is a noncitizen. Number three is his
10  alleged lack of knowledge as to what he was doing and the
11  specific drug and drug quantity he was transporting.
12          I would like to address each in turn. Before I do
13  so, however, I think it is important to emphasize something
14  that is mentioned in our sentencing memo as well as in the
15  presentence report. We could have easily charged this
16  defendant with a much more serious offense, 841(c), in which
17  case he would be looking at a range of 108 to 135 or under
18  841(f), which is ultimately what his codefendant plead guilty
19  to, in which case he would be looking at 60 months.
20          And the defense, a different lawyer than Ms.
21  Tenney, came to us and implored us to exercise our discretion
22  in Mr. Youngberg's favor and allow him to plead guilty to a
23  misprison. And the grounds advanced were essentially very
24  similar to what you have heard today. He has had some mental
25  health issues. He is young. He is not very culpable in the

1  offense. He was just along for the ride although he knew
2  what he was doing, etc. That appeal worked, and we went
3  along with that.
4        And I have to confess that I feel a little bit like
5  the victim of bait and switch when those same arguments are
6  now advanced to effectively ask that he be given a walk. He
7  is Canadian. If he gets probation, that is effectively
8  getting no punishment whatsoever. That is not appropriate in
9  this case.
10       Again, what he did is very serious. That amount of
11 ephedrine, I am told, would be used to manufacture
12 approximately 40 kilograms of methamphetamine. I think it is
13 worth noting that under either of the cases we could have
14 charged him at, the guidelines peg out at a level 38 for 3
15 kilograms of ephedrine, and this defendant was transporting
16 50 kilograms. So this is a serious offense, and the fact
17 that he has plead guilty to a misprison should not be allowed
18 to obscure that fact.
19       To address the specific arguments first, the most
20 troubling thing about the mental health issue -- other than
21 the fact that I think we have already accounted for it in the
22 way we plead this case out -- is the selective disclosure
23 from the defense.
24       If you read the presentence report Ms. Neal wanted
25 to interview the defendant about his mental health issues.

1  He started to answer, and he was advised by the defense --
2  again, I believe someone different from Ms. Tenney -- not to
3  answer those questions.  Probation asked that he sign a
4  release for his mental health records.  That request was
5  refused.
6          So all the Court has and all the government has is
7  what the defense has decided to provide, and it is
8  unconscionable.  You can't put your mental health problems at
9  issue, and then say, "But I'm not going to give you all the
10 information to allow you to evaluate that.  I'm just going to
11 give you what I decide to give you."  Particularly where the
12 records are in Canada, and I couldn't subpoena them if I
13 wanted to.
14         Again, it is worth noting that I have asked more
15 than once, again, back in July.  "Look, if you want to rely
16 on his mental health issues, provide me the records."
17 Because I want to look at it and make sure that the
18 government is doing the correct thing.  That request was
19 never complied with.
20         So in the first instance I think the Court should
21 reject that argument, because the defense is effectively
22 playing games with the evidence.  "We will show you what we
23 want to show you, but we are not going to show you
24 everything."  That should raise some question in the Court's
25 mind.

1          Second, the records that they have chosen to
2  provide on their face do not satisfy the standards set forth
3  in the guidelines to depart downwards.  There is no evidence
4  that this defendant didn't know what he was doing.  In fact,
5  the evidence is all to the contrary.
6          As set forth in the presentence report, when he was
7  stopped at the border he denied having any contraband.  When
8  they do the inspection and they find the ephedrine, he gives
9  a story, "Well, I lent my car to somebody.  Maybe they put it
10 in the trunk when I didn't know about it.  I don't know
11 anything about it."
12         Then he gives a subsequent post arrest statement.
13 "Yeah, okay.  I admit that I knew it was in there."  Then he
14 gives a proffer to the government where he admits that he
15 actually saw the barrels placed in the car and was told that
16 what they contained.  So when you lie to cover up your role
17 in an offense, that is the best evidence there is that you
18 knew that what you were doing was wrong.  Again, I don't
19 believe the defense really contends that he didn't.
20         The other argument that they advance is that
21 because he is not a leader, because he is suggestible, that
22 somehow that means he should depart downwards.  Well, that is
23 not the standard.  The standard is there has to be a showing
24 that you couldn't control behavior that you knew was
25 wrongful.  There is no evidence in this record whatsoever

1  that the defendant lacked the ability to control himself.
2          Sure, he is follower. We have never said that he
3  was a leader, and we never said he should be sentenced as a
4  leader. If he had been charged with a more serious offense,
5  he would have got the 4 point minimal participant adjustment.
6  By charging him with a misprison he is doing a lot better
7  than he would have done with that adjustment. So I believe
8  that we have already taken those facts into account. Even
9  accepting what they decide to provide on its face, it doesn't
10 satisfy the standard under the guidelines for departing
11 downward.
12         The second argument that is advanced is that he
13 might be looking at more restrictive confinement than he
14 otherwise would because he is not a citizen. I have checked
15 with Ms. Neal. Ms. Neal has checked with the Bureau of
16 Prisons. If he is eligible and should be in a mental health
17 facility to deal with what problem he may have, he is
18 eligible for that.
19         So if it turns out, as has been contended by his
20 therapist, that imprisonment would be a problem for him, they
21 have facilities and has the ability, notwithstanding the
22 status as an alien, to send him to a facility where he could
23 be cared for. They have asked for Sheridan. If they want to
24 be at Sheridan, that is fine. My point is that it is not true
25 to say that he is not eligible for an appropriate placement

1   given his conditions. So that is not a grounds to depart.
2          The third one advanced was that he allegedly didn't
3   know what he was transporting. That is belied by the
4   stipulating facts in the plea agreement. In the plea
5   agreement he admitted to transporting ephedrine. He admitted
6   he knew that he was transporting ephedrine. He admitted that
7   he knew it was wrong, which is consistent with his proffer to
8   the government.
9          There is simply no evidence in this record that he
10  didn't know what he was doing. He has consistently
11  maintained -- and I will give the defendant credit for
12  this -- that he wasn't quite sure what ephedrine was going to
13  be used for. That may or may not be true. I don't have the
14  evidence on that one way or the other.
15         But he did know what he had. He did know how much,
16  maybe not the weight, but he knew it was two barrels. And he
17  did know that it was illegal to bring it into the country.
18  This is not a case that is remotely similar to the cases
19  cited by the defense. Those facts are set forth in the plea
20  agreement and there for purposes of this hearing.
21         So we believe the sentence that we have recommended
22  and that probation recommended is already extraordinarily
23  lenient given these facts. 21 months for bringing in 50
24  kilograms of ephedrine is a very, very -- it is a more than
25  fair sentence. And to suggest that he should essentially and

1  effectively just be released for doing that is something the
2  Court should not entertain.  Thank you, your Honor.
3           THE COURT:  All right.  I must say that this is one
4  of the more troublesome sentencings that I have encountered.
5  But I have to say that the concerns I have have been
6  addressed in the plea bargain, Ms. Tenney.  This case was
7  charged in a very light way from the beginning, and if it had
8  been charged as I would have expected it to be charged, I
9  would have been struggling with trying to come up with a way
10 to give him something less than 10 years.
11          21 months is a very light sentence for this
12 conduct, and I think the government has appropriately taken
13 into consideration already what I consider to be a very
14 difficult and troublesome mental condition.  But it just
15 wouldn't be appropriate for me to go beyond that.
16          I find the total offense level is 16.  The criminal
17 history category is 1, which gives a guideline range of 21 to
18 27 months.  I'm imposing a period of confinement of 21 months
19 and a period of supervised release of one year.  I'm waiving
20 a fine due to defendant's financial condition.  He will be
21 required to pay a special assessment for the count of
22 conviction.
23          He will be permitted to voluntarily surrender.  The
24 supervised release will be subject to standard conditions
25 together with those additional conditions set forth in the

1  presentence report.  The justification for the sentence is
2  that set forth in the presentence report.
3           Mr. Lombardi, I want a specific statement put in
4  the judgment and commitment that I want the Bureau of Prisons
5  to exercise special care in the supervision of this inmate
6  given his health condition.
7           MR. LOMBARDI:  I think that is certainly
8  appropriate.  Your Honor, I hesitate to bring it up, but the
9  government does believe the defendant should be remanded.
10 The reason we believe that is that if you look at the records
11 they did provide, there is a clear statement in their
12 expert's report that his parents have had difficulty getting
13 him to come down for hearings.
14          My concern is that if he is not remanded now that
15 he -- he walked into court today thinking there was a
16 chance -- I don't know how good a chance he thought there
17 was -- but there was a chance he would end up with no time.
18 My concern is that if he is allowed to go back to Canada
19 given the statement that is in material that the defense has
20 provided that they have a difficult time persuading him to
21 come down for hearings, now that he has been sentenced that
22 difficulty will rise to a level of impossibility.
23          THE COURT:  Mr. Youngberg, will you come back to
24 United States when required to do so?
25          THE DEFENDANT:  Yes.

1        THE COURT:  All right.  I trust you.  Okay?

2        MR. LOMBARDI:  Thank you, your Honor.

3        THE COURT:  Mr. Youngberg, you may have a right to
4   appeal this sentence.  If you wish to file a notice of appeal
5   and have it done by an attorney and cannot afford one, one
6   will be appointed to assist you if you so request.  If you
7   wish the assistance of the clerk, she will assist you in
8   filing a notice of appeal if you so request.  Do you
9   understand?

10       THE DEFENDANT:  Yes.

11       THE COURT:  All right.

12       MR. LOMBARDI:  I want to make sure I understand the
13  Court's recommendation for first commitment.

14       THE COURT:  At Sheridan?

15       MR. LOMBARDI:  Let me think.  Perhaps the first --
16  the Court's statement about particular care for this one --

17       THE COURT:  Yes.

18       MR. LOMBARDI:  My only concern is that BOP may well
19  conclude that after they assess him that Sheridan may not be
20  the best place for him.

21       THE COURT:  If, in their judgment, he requires
22  another facility, that is fine.  But if they feel that
23  Sheridan is consistent with my primary recommendation of
24  careful supervision, then that is fine.  There was also a
25  motion to exonerate the bond.  Is there any objection to

```
 1  that?
 2          MS. TENNEY:  Your Honor, actually we filed the
 3  motion to exonerate the bond believing he would be remanded
 4  today.  So actually it is not appropriate at this time.  I
 5  apologize.
 6          MR. LOMBARDI:  Defendant shall surrender to
 7  marshals or to the BOP?  What is defendant's preference?
 8          MS. TENNEY:  To Bureau of Prisons.
 9          MR. LOMBARDI:  And as notified by probation and
10  pretrial services?
11          THE COURT:  That is fine.
12          MR. LOMBARDI:  Let me show this to defense counsel.
13          MS. TENNEY:  We have reviewed the judgment, your
14  Honor, and have no objection.
15          THE COURT:  All right.  Thank you, Counsel.  We
16  will be in recess.
17          THE CLERK:  All rise.  Court is in recess.
18              (Proceedings concluded 10:35 a.m.)
19
20
21
22
23
24
25
```

Case 2:04-cr-00281-JCC   Document 39   Filed 01/05/05   Page 16 of 16

16

|    |                                                                                     |
|----|-------------------------------------------------------------------------------------|
| 1  | CERTIFICATE                                                                         |
| 2  | STATE OF WASHINGTON      )                                                          |
| 3  |                          ) ss                                                       |
| 4  | County of King           )                                                          |
| 5  | I, the undersigned Notary Public in and for the                                     |
| 6  | State of Washington, do hereby certify:                                             |
| 7  | That the foregoing Verbatim Report of Proceedings                                   |
| 8  | was taken stenographically before me and transcribed under my                       |
| 9  | direction; that the transcript is a full, true and complete                         |
| 10 | transcript of the proceedings, including all questions,                             |
| 11 | objections, motions and exceptions;                                                 |
| 12 | That I am not a relative, employee, attorney or                                     |
| 13 | counsel of any party to this action or relative or employee                         |
| 14 | of any such attorney or counsel, and that I am not                                  |
| 15 | financially interested in the said action or the outcome                            |
| 16 | thereof;                                                                            |
| 17 | That I am herewith securely sealing this transcript                                 |
| 18 | and delivering the same to the Clerk of the above-entitled                          |
| 19 | Court.                                                                              |
| 20 | IN WITNESS WHEREOF, I have hereunto set my hand and                                 |
| 21 | affixed my official seal this 29th day of December, 2004.                           |
| 22 |                                                                                     |
| 23 |                                                                                     |
| 24 | *[signature: Laurie Briggs]*                                                        |
| 25 | Notary Public in and for the State of Washington, residing at Issaquah.             |

LAURIE BRIGGS / VERNON & ASSOCIATES COURT REPORTERS
1019 Pacific Avenue, #801, Tacoma, Washington 98402   (253) 627-2062